John A. **BALCERZAK** and Joseph T. Gabrish, Plaintiffs,

v.

**CITY OF MILWAUKEE**, Milwaukee Police Department, Chief of Police Philip Arreola, Board of Fire and Police Commissioners of the City of Milwaukee, M. Nicol Padway, Kathleen Harrell–Patterson, Robert Harris, Phoebe Weaver–Williams, Daniel A. Blinka, Grant F. Langley, Martin Joseph Donald, and Jan A. Smokowicz, individually and in their official capacities, Defendants.

No. CIV. A. 95–C–749.

United States District Court,
E.D. Wisconsin.

Oct. 10, 1997.

John F. Fuchs, Fuchs, Finn, Snow & O'Connell, Wauwatosa, WI, for Plaintiffs.

Rudolph M. Konrad, Deputy City Attorney, Milwaukee, WI, for Defendants.

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

REYNOLDS, District Judge.

### I. BACKGROUND

This case arises from one of the darker periods of Wisconsin's history, the series of brutal murders committed by Jeffery Dahmer. The plaintiffs, John A. Balcerzak ("Balcerzak") and Joseph A. Gabrish ("Gabrish") were police officers subjected to discipline by the Milwaukee Police Department ("MPD") for their handling of an encounter, on or about May 27, 1991, with Dahmer and Konerak Sinthasomphone ("Sinthasomphone"), shortly thereafter a victim of Dahmer's. Following Sinthasomphone's murder and the discovery of Dahmer's other offenses, former MPD Chief Arreola ("Arreola") allegedly suspended the plaintiffs from employment as police officers. M. Nicol

Padway, Kathleen Harrell–Patterson, Phoebe Weaver–Williams, Daniel D. Blinka and Robert Harris were, at all relevant times, members of the Board of Fire and Police Commissioners of the City of Milwaukee ("the Board"). Milwaukee City Attorney, Grant F. Langley and Assistant City Attorneys Martin Joseph Donald and Jan Smokowicz participated in Board proceedings before Board member and Hearing Examiner Blinka which ultimately led to the termination of plaintiffs' employment with the MPD.

## A. Structure of the Disciplinary Process

Because Milwaukee is a city of more than 150,000 residents, Wis. Stat. § 62.50(13) permits a police officer who is discharged or suspended for more than five days to appeal that action to the Board. Section 62.50(16) mandates a trial at which the parties are the chief of police and the disciplined police officer. The officer is entitled to counsel during the trial, and the city—that is the chief and the MPD—are to be represented by the city attorney. *Id.* While the city attorney is required to represent the city in the persons of the chief of police and the MPD, the city attorney must also provide the Board with whatever legal counsel it needs. § 62.09(12)(a).

Section 62.50(16) provides a series of procedural protections which are relevant here only insofar as they bespeak a fairly formal adjudicatory format for the disciplinary process. When an officer's discipline is upheld by the board, that officer may demand review of the decision by a Wisconsin circuit court. § 62.50(20).

This process provides the general outline of what is alleged to have occurred in this case: After investigation, Chief Arreola suspended the plaintiffs and recommended their termination to the Board. The Board held what appears to have been a series of proceedings in which the chief, the city attorney, the plaintiffs, and plaintiffs' counsel were involved. The Board decided to terminate the plaintiffs. The plaintiffs sought circuit court review, obtained a reversal, and were reinstated with sixty-day suspensions on April 27, 1995.

## B. The Current Litigation

The complaint, filed on July 20, 1995, and amended on October 6, 1995, alleges that the defendants inflicted a catalogue of constitutional wrongs on Balcerzak and Gabrish during the course of MPD's investigation of the Sinthasomphone matter and the subsequent disciplinary proceedings. The plaintiffs claim to have been deprived of their rights to counsel and to remain silent during MPD's investigation; they claim to have been deprived of both substantive and procedural due process during the investigation and disciplinary process; and they claim to have been singled-out for discipline because of their race, Caucasian, in violation of the Equal Protection Clause.

Specifically, the plaintiffs allege they were denied the Fifth Amendment protection against self-incrimination and the Sixth Amendment right to counsel during interrogation in the course of MPD's investigation. The plaintiffs also assert that they were deprived of due process when Board-member Padway and the office of the city attorney allegedly reneged on an agreed-upon disposition of the plaintiffs' disciplinary charges, and by the fact that the city attorney simultaneously represented the Board, the MPD, and Arreola in his position as MPD chief. The plaintiffs also claim that the defendants altered evidence so as to publicly give the impression that Sinthasomphone was "a child of tender years," thus depriving the plaintiffs of substantive due process. (Am. Compl. ¶ 34.) Further, the plaintiffs assert in several different ways that they were denied due process when the defendants deliberately violated their rights as a means of "appeas[ing] the minority community," (Am. Compl. ¶ 33), and held sham hearings in which evidence was ignored and decisions made arbitrarily and irrationally. Finally, the plaintiffs claim that their treatment constituted a deviation from standard procedure based on their status as white men and political pressure leveled by "Milwaukee's minority community," (Am. Compl. ¶ 27), in violation of the Equal Protection Clause.

Currently before the court is a motion to dismiss under Fed.R.Civ.P. 12(b) for failure to state claims and on the ground that the

defendants are immune from liability. As is detailed below, the only viable claims the plaintiffs bring are those for Equal Protection violations by the Board and by the chief of the MPD, in his official capacity. All other claims and defendants are dismissed.

## II. STANDARDS FOR A MOTION TO DISMISS

This court will grant a motion to dismiss for failure to state a claim if it is clear that the plaintiff would not be entitled to relief even if the complaint's factual allegations were proven. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Accordingly, the court must accept as true the plaintiff's factual allegations and must draw all reasonable inferences from the pleadings in favor of the plaintiff. *Gillman v. Burlington N. R.R.*, 878 F.2d 1020, 1022 (7th Cir.1989). The court is not required, however, to ignore any facts alleged in the complaint that undermine the plaintiff's claim or to assign weight to unsupported conclusions of law. *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir.1988). Accordingly, a complaint must be dismissed if it fails to allege an element which is essential to a claim for relief. *See Cannon v. Univ. of Chicago*, 648 F.2d 1104 (7th Cir.1981).

## III. DISCUSSION

### A. Immunity

■ The plaintiffs cannot maintain an action against defendant Board members Padway, Harrell–Patterson, Harris, Weaver–Williams, and Blinka because these defendants enjoy absolute quasi-judicial immunity from lawsuits as individuals. It is well established that local officials acting in a judicial capacity enjoy the same immunity as more traditional judges. *Reed v. Village of Shorewood*, 704 F.2d 943 (7th Cir.1983). This immunity springs not from the notion that judges are above reproach, but rather that an appellate process exists for righting judicial wrongs. If aggrieved litigants are permitted to end-run, or in this case exceed, the appellate process, judicial actors would be hard-pressed to carry out their duties. *Id.*

The amended complaint demonstrates that the process by which these defendant Board members decided plaintiffs' discipline bore the hallmarks of a judicial process. Further, because this process provided for judicial review of the Board's decision—review that here turned favorably for the plaintiff-officers—the defendant Board members are immune from this suit. Defendants Padway, Harrell–Patterson, Harris, Weaver–Williams, and Blinka are dismissed from this action.

■ The defendant city attorneys, Langley, Donald, and Smokowicz, enjoy quasi-judicial immunity by virtue of their roles as legal advisors to the Board, and prosecutorial immunity for their roles as counsel to Chief Arreola in Board proceedings. In the same manner as the defendant Board members acted in quasi-judicial roles, the city attorneys acted as quasi-law clerks. *See Mitchell v. McBryde*, 944 F.2d 229 (5th Cir.1991) (collecting cases). Judge's law clerks are a vital element of our system of orderly justice. Leaving law clerks exposed to suit, when judges are immune, would undermine the important purposes of judicial immunity by providing disgruntled litigants an alternative target. *Dellenbach v. Letsinger*, 889 F.2d 755 (7th Cir.1989). Moreover, in the same manner as for judges, ample process exists for clerks' error-correction. Insofar as the defendant city attorneys are alleged to have committed a wrong in their roles as advisors to the Board, they enjoy the benefit of the Board's quasi-judicial immunity. *See Bettencourt v. Board of Registrat. in Med.*, 904 F.2d 772 (1st Cir.1990) (staff to medical licensing board covered by quasi-judicial immunity).

■ For any damages allegedly caused by the defendant city attorneys in their roles as counsel for Chief Arreola during the Board proceedings, they enjoy what amounts to quasi-prosecutorial immunity. Chief Arreola's role in representing the MPD before the Board affords him the same immunity in his individual capacity. This immunity adheres to attorneys charged with presenting evidence during administrative hearings. *See Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

While the *Butz* court had before it only a claim based on the defendant's presentation of evidence, the immunity must extend to the allegedly broken agreement with the plaintiffs related to the disposition of their disciplinary proceedings. The alternative, no doubt, is that the agreement the defendants are accused of breaking would not have existed in the first place. Moreover, the Seventh Circuit has recognized, in the context of a criminal prosecution, that, for immunity purposes, a plea agreement cannot be seen as distinct from the other aspects of litigation. *Mendenhall v. Goldsmith*, 59 F.3d 685 (7th Cir.1995).

There is no principled way to distinguish this reasoning from the case at bar. Circuit court review—not lawsuits for money damages—serves as a check on litigants in a Board proceeding. The participants must remain free to pursue their causes concerned only with the correctness of their actions viewed under the shadow of judicial review. Chief Arreola and the defendant city attorneys Langley, Donald, and Smokowicz are thus immune from this suit.

## B. Fifth and Sixth Amendment Claims

■ The plaintiffs' claims, under the Sixth Amendment, for deprivation of counsel is dismissed for failure to state a claim. A police officer has no constitutional right to counsel during pre-termination hearings. *Panozzo v. Rhoads*, 905 F.2d 135 (7th Cir. 1990). It follows, *a fortiori*, that no such right exists "at the early stages of investigation," (Am. Compl. ¶ 26), prior to the initiation of disciplinary proceedings. The plaintiffs attempt to distinguish *Panozzo* by claiming in their brief that the plaintiff therein was not under the cloud of imminent criminal investigation. The court rejects this because the amended complaint fails to plead any facts that give life to this supposed distinction.

■ Similarly, the Fifth Amendment protection against self-incrimination adheres when a declarant confronts "substantial hazards of self-incrimination." *California v. Byers*, 402 U.S. 424, 428, 91 S.Ct. 1535, 1538, 29 L.Ed.2d 9 (1971). Because the amended complaint fails to allege facts from which a "substantial hazard of self-incrimination" could be inferred, the plaintiffs' Fifth Amendment claims are also dismissed.

## C. Procedural Due Process

■ It is well established that state law may, and for police officers usually does, create a property interest in one's public employment. Thus, under the Fourteenth Amendment, the government may not deprive its employee of this interest without due process of law. *See generally Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Where practical, the government must provide a property interest holder with process prior to the deprivation of the property interest. However, where pre-deprivation process is impractical, meaningful post-deprivation proceedings satisfy the due process clause. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

■ Application of *Parratt* establishes that random and unauthorized deprivations require only a meaningful post-deprivation remedy. This applies to both negligent deprivations, *id.*, and intentional deprivations. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The Constitution does not require process prior to random and authorized deprivations because, by definition, it is impossible for a state to foresee such deprivations.

■ In this case, the deprivation in question was the plaintiffs' termination. The complained of acts allegedly occurred in the course of a pre-deprivation hearing. These acts are repeatedly characterized as "deliberate," (Am. Compl. ¶ 30), "arbitrar[y] and irrational," (*id.* at ¶ 35), "outside the scope of [the defendants'] duties," and "in the clear absence of jurisdiction," (*id.* at ¶ 25). In sum, the complaint, as amended, is predicated on the individual defendants breaking with state-established procedure. Stated another way, this lawsuit is not an attack on the statutory procedures that govern the discipline of police officers potentially subject to discipline.

Not able to attack the statutory procedures and yet mindful of *Parratt*, the plain-

tiffs claim that the State could have foreseen these alleged shenanigans and provided yet more *pre-deprivation* process. Specifically, the plaintiffs turn to *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), in which the Court held that the "voluntary" admission of an incompetent person to a mental hospital could not be considered random and unauthorized for the purposes of the *Parratt* rule. This turned on the fact that the established procedure for voluntary admission contained no provision for those persons incapable of making voluntary choices.

The plaintiffs would stretch the holding in *Zinermon* to shield from *Parratt* acts by an official done *in the context of* established procedure. Despite the fact that the plaintiffs' brief attempts to strengthen this assertion by claiming that the acts at issue here were "pursuant to" established procedure, the amended complaint, the brief as a whole, and the plain reading of Wisconsin statutes make clear that the acts alleged were contrary to established procedure. In contrast, in *Zinermon,* the state actors properly utilized admission procedures. If *Zinermon* is read as broadly as the plaintiffs seek, and Wisconsin should foresee that officials charged with carrying out procedure will deliberately abuse their positions, act in the clear absence of jurisdiction, and carry-out their duties arbitrarily and irrationally, no amount of pre-deprivation process would suffice.

The plaintiffs cite a *pre-Zinermon* case, *Jones v. Clark,* 607 F.Supp. 251 (E.D.Pa. 1984), in support of the assertion that unlawful deprivations in the context of otherwise lawful pre-deprivation proceedings are violative of the due process clause. This reliance is misplaced, however, and illustrates why the plaintiffs here cannot recover under a procedural due process theory. In *Jones,* the court found that the plaintiff in that case did not have adequate state law *post-deprivation* remedies available. *Id.* at 257. In obvious contrast, according to the amended complaint itself, the plaintiffs in the instant case did have such post-deprivation remedy, one that worked in their favor.

In sum, procedural due process requires neither perfect process nor infinite process. Rather, it mandates a balancing of interests, one of which is the practicality of providing pre-deprivation process at a time and of a type likely to avoid erroneous deprivations. *See generally Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *Parratt* and its progeny recognize that in a certain type of case, where the deprivation is not predictable, pre-deprivation process—or here, *more* pre-deprivation process—is simply not possible. The Constitution does not require the impossible, it merely requires that when pre-deprivation process is impossible, the State offer the next best thing, meaningful post-deprivation process. Because the amended complaint fails to allege that the post-termination process accorded the plaintiffs by the State of Wisconsin was inadequate, the amended complaint fails to allege a violation of procedural due process.

### D. Substantive Due Process

 In addition to the alleged procedural defects of the disciplinary proceedings dispatched above, the plaintiffs claim to have been deprived of substantive rights conferred by the due process clause. This claim fails because it merely restates the procedural due process claims. However, substantive and procedural due process constitute vastly different constellations of concepts. Substantive due process, an historically disorganized area of Constitutional law, is violated when the government engages in actions that "offend those canons of decency and fairness which express [our nation's] notions of justice . . . even toward those charged with the most heinous offenses." *Rochin v. California,* 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952).

 A claimed violation of substantive due process rights must be based on the deprivation of a protected property or liberty interest. *Smith v. Town of Eaton,* 910 F.2d 1469 (7th Cir.1990). That is, as with procedural due process, a plaintiff must establish a "legitimate claim of entitlement." *Roth,* 408 U.S. at 577, 92 S.Ct., at 2709. For this reason, it is necessary to parse the section of

the amended complaint dealing with substantive due process.

The first substantive due process allegation asserts a deprivation insofar as the City Attorney's Office simultaneously "represented" the MPD and Chief Arreola as well as the Board during the Board proceedings. (Am. Compl. ¶ 31.) Second, the amended complaint alleges that plaintiffs' substantive due process rights were violated because all of the defendants had the intent to adopt Chief Arreola's recommendation to terminate the plaintiffs, "regardless of any and all evidence," "to avoid minority rioting or adverse political repercussions." (*Id.* ¶ 32.) Third, paragraph 33 repeats the same allegation, using different adjectives, adding only that the procedure was "a pro forma, mock hearing for political purposes which cannot be considered rational" and that the plaintiffs were terminated "to appease the minority community." Fourth, the amended complaint alleges that the plaintiffs were deprived of a liberty interest when the defendants altered or withheld evidence so as to create the public impression that Sinthasomphone was a "child of tender years." (*Id.* ¶ 34.) This allegedly stigmatized the plaintiffs by portraying them as racists. The amended complaint concludes with the assertion that the defendants' actions were arbitrary and irrational. (*Id.* ¶ 35.)

Once the thicket of allegations in the amended complaint is untangled, it becomes obvious that many of the claims in which the phrase "substantive due process" appears merely echo procedural due process claims. Most of these claims are, in fact, pled in such a fashion: "The plaintiffs were deprived of procedural and substantive due process ..." The first batch of claims, alleging defects in the disciplinary process do not state claims under substantive due process. The substantive element of due process prohibits certain governmental acts regardless of the degree of procedural care with which they are carried out. *Kelley v. Johnson,* 425 U.S. 238, 248, 96 S.Ct. 1440, 1446, 47 L.Ed.2d 708 (1976). The termination of public employment is not, of course, one of those always-prohibited governmental acts. Therefore, the loss of public employment is

governed by procedural due process. *Zorzi v. County of Putnam,* 30 F.3d 885 (7th Cir. 1994).

Further, the naked allegation that the defendants acted arbitrarily and irrationally is insufficient to state a claim. When a plaintiff seeks to advance a substantive due process claim on the grounds that governmental action was arbitrary or irrational, he must plead the facts on which the claim is premised. *Pace Resources v. Shrewsbury Township,* 808 F.2d 1023, 1035 (3d Cir.1987) (*citing Friedman v. Village of Skokie,* 763 F.2d 236, 239 (7th Cir.1985)). In support of the claim that the defendants in this case acted arbitrarily and irrationally, the plaintiffs merely assert that the defendants acted without regard for the "facts or evidence." (Am. Compl. ¶ 35.) These facts merely repeat alleged defects in the process the plaintiffs had been afforded and do not support a substantive due process claim.

The only remaining aspect of the plaintiffs' substantive due process claims revolve around the allegations that the defendants withheld and altered evidence so as to create the public impression that Sinthasomphone was a "child of tender years." The plaintiffs assert that this publicly portrayed them as racists, stigmatizing them in violation of the substantive component of the due process clause. Thus, the plaintiffs appear to posit substantive due process as a type of Constitutional defamation claim. This is not the case. In this context, the due process clause prohibits the governmental employer from stigmatizing an employee so as to create a tangible loss of employment opportunity. *Johnson v. Martin,* 943 F.2d 15, 16 (7th Cir.1991) (*citing Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)).

Due process operates so as to restrain government from impinging on liberty and property interests. There is no free-floating liberty or property interest in being well-thought of; there is, however, such an interest in pursuing employment without undue governmental interference. The amended complaint in this case alleges no such loss of opportunity. Quite to the contrary, the amended complaint explains that the plain-

tiffs were reinstated to their posts. (Am. Compl. ¶ 20.) Therefore, there are no facts under which the plaintiffs can show a deprivation of the type protected by substantive due process.

None of the plaintiffs' substantive due process claims state a claim upon which relief can be granted. They are therefore dismissed.

### E. Equal Protection

 Paragraph 27 of the amended complaint manages to a state a claim for the violation of the plaintiffs' rights to equal protection. The due process clause prohibits intentional racial discrimination. *Majeske v. Fraternal Order of the Police,* 94 F.3d 307 (7th Cir.1996). In alleging that the defendants singled the plaintiffs out for discipline because of their race, the amended complaint states a cause of action under § 1983. To sufficiently state a claim under § 1983, a complaint must plead facts meeting two essential elements: that a state actor committed the complained of conduct, and that this conduct deprived the plaintiff of his or her rights under the Constitution. *Papapetropoulos v. Milwaukee Transp. Servs., Inc.,* 795 F.2d 591 (7th Cir.1986). Once the brambles are cleared away, the complaint as amended does reveal these elements.

### F. Monell Liability

A more complicated question remains: Who of the bevy of defendants can be held liable under the sole remaining theory? As discussed *supra,* all of the individual defendants enjoy immunity in their personal capacities. That leaves us with the City of Milwaukee, the MPD, Chief of the MPD, and the Board as the remaining possible defendants.

 The MPD and the City, however, are dismissed from this case because the amended complaint fails to allege an essential element of a § 1983 claim—any causal link between acts of those parties and the wrongs of which the plaintiffs complain. It is well settled that governmental agencies cannot be held liable under § 1983 by virtue of respondeat superior. *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In order to hold such an entity liable for the constitutional wrongs committed by their employees, such a wrong must be causally linked to a policy or custom promulgated or enforced by the entity itself. Here, the plaintiffs complain of a variety of specific, allegedly unconstitutional acts. Nowhere does the amended complaint suggest, however, that the acts came about by virtue of any act or omission of the City or the MPD. Paragraph 23 apparently attempts to partially meet this requirement by alleging that, since 1994, the City has discriminated against white police officers in virtually every aspect of employment. Even if this broad, boiler-plate averment were true, as we must assume it is for the purposes of the instant motion, it fails to allege the existence of any causal link between a City policy or custom and the injuries alleged in this suit. Quite to the contrary, in fact, the amended complaint is quite emphatic that the individual officials named as defendants went well beyond the authority that their governmental employer grants them. Finally, the amended complaint's unspecified assertion of a conspiracy is patently insufficient. *See Kunik v. Racine County,* 946 F.2d 1574 (7th Cir.1991). Therefore, the City and the MPD are dismissed from this action.

The amended complaint does allege, however, that the remaining defendants, the Chief of the MPD, in his official capacity, and the Board, caused the sole remaining constitutional tort, the violation of the plaintiffs' right to equal protection. Specifically, the amended complaint alleges that the Chief selected the plaintiffs for discipline due to their race and that the Board adjudicated the charges against them in a manner according to their race. To be precise, the amended complaint states a cause of action against the Chief and the Board for their acts as decision-makers. The Chief may be liable for the initial decision to suspend the plaintiffs and the Board may be liable for imposing discipline on a discriminatory basis. It should be noted, however, that the acts for which the Chief may be liable are those committed prior to the Board proceedings. In the context of the Board proceedings, the Chief served not as decision-maker, but as

litigant/prosecutor. As discussed *supra*, the Chief may not be held liable for acts done in the role as a litigant/quasi-prosecutor before the Board.

## IV. CONCLUSION

The defendant Chief of the Milwaukee Police Department's motion to dismiss the plaintiffs John A. Balcerzak's and Joseph T. Gabrish's claims that the Chief, in his official capacity, initially suspended the plaintiffs for discriminatory reasons is **DENIED.**

The defendant Board of Fire and Police Commissioners of the City of Milwaukee's motion to dismiss the plaintiffs John A. Balcerzak's and Joseph T. Gabrish's claims that the Board imposed discipline against the plaintiffs for discriminatory reasons is **DENIED.**

The defendants' motion to dismiss is **GRANTED** as to all other claims. The remaining defendants, the City of Milwaukee, Milwaukee Police Department, M. Nicol Padway, Kathleen Harrell–Patterson, Robert Harris, Phoebe Weaver–Williams, Daniel A. Blinka, Grant F. Langley, Martin Joseph Donald, and Jan A. Smokowicz are **DISMISSED** from this action.

The deputy clerk shall notice a scheduling conference in this matter.