*498 ORDER (Affirming)
AMANDA L. ROCKMAN *, Interim Chief Judge.
INTRODUCTION
The Court must determine whether to uphold the decision of the Grievance Review' Board (hereinafter GRB). The finds that the petitioner’s due process rights were not violated, and thus, affirms the agency decision due to the presence of substantial evidence to support the decision. The analysis of the Court follows below.
PROCEDURAL HISTORY
The petitioner, Sarina Quarderer, by and through Lay Advocate Betsy Falcon, filed her Petition for Administrative Review of Grievance Review Board Decision on April 21, 2010. See Employment Relations Act of 2004 (hereinafter ERA), 6 HCC § 5.35c; see also Ho-Chunk Nation Rules of Civil Procedure (hereinafter HCN R. Civ. P.), Rule 63(A)(1)(a). On April 21, 2010, the Court entered the Scheduling Order, setting forth the time-lines and procedures to which the parties should adhere during the pendency of the appeal. On April 22, 2010, the respondent timely filed the administrative record. See HCN R. Civ. P. 63(D). On behalf of the petitioner, Lay Advocate Betsy Falcon filed a timely correspondence on May 18, 2010, which the Court accepted as her Initial Brief. Id., Rule 63(E).
Subsequently, the respondent filed a Motion, for Extension of Time and Notice and Motion for Expedited Consideration, requesting that the Court stay the proceedings to allow the respondent to obtain legal counsel in accordance with a separate court order. See Ho-Chunk Nation v. Ho-Chunk Nation Grievance Review Board & Ginny Stenroos, CV 10-07 (HCN Tr. Ct., Apr. 26, 2010). On June 23, 2010, the Court granted the respondent’s request to stay the current proceedings and for good cause modified the scheduling order. Order (Granting Stay), CV 10-33 (HCN Tr. Ct., June 23, 2010). On July 6, 2010, the respondent entered a Notice of Substitution of Counsel. Subsequently, the respondent requested an extension of time to file the Response Brief, accompanied by a Motion for Expedited Consideration. The Court denied the initial request for expedited consideration, prompting the respondent to resubmit the Motion. Order (Denial of Mot. for Expedited Consideration), CV 10-33 (HCN Tr. Ct., July 12, 2010). The Court granted the second Motion and extended the respondent’s timeframe to submit a Response Brief. Order (Granting Mot. for Expedited Consideration), CV 10-133 (HCN Tr. Ct., July 19, 2010).
Due to recurring issues in several cases involving the Grievance Review Board and potential conflicts of interest, the Court sua sponte stayed the instant case until the Court could make a decision regarding the potential conflicts. Order (Stay of Proceedings), CV 10-33 (HCN Tr. Ct., Aug. 5, 2010). Following the issuance of a decision regarding conflicts of interest involving the Grievance Review Board, the Court issued a Notice of Hearing for the instant case. See also Order (Granting Mot), CV 10-33 (HCN Tr. Ct., Nov. 2, 2010). The Court convened the Scheduling Conference on November 30, 2010, and issued a modified Scheduling Order. At the Conference, the petitioner requested that the Court entertain oral arguments. *499 The Court granted the request. Order (Notice of Oral Argument), CV 10-33 (HCN Tr. Ct., Dec. 1, 2010).
The respondent timely filed a Response Brief on December 30, 2011. HCN R. Civ. P. 63(E). Furthermore, the respondent supplemented the administrative record and provided a copy of the audio recording of the GRB Hearing, which was never submitted with the administrative record. The petitioner failed to file a Reply Brief. The Court convened the Oral Argument Hearing on February 16, 2011 at 1:30 CST. The following parties were in attendance: Heidi Drobnick, Attorney for the respondent; Samantha Day, Ho-Chunk Casino Table Games Shift Manager; Eric Logan, Ho-Chunk Casino Table Games Trainer; and Sarina Quarderer, respondent. The following party failed to appear at the hearing and failed to provide the Court notification of her absence: Lay Advocate Betsy Falcon, representing the petitioner.
At the Oral Argument Hearing, the respondent requested additional time to contact her Lay Advocate or obtain new representation. Oral Argument Hr’g (LPER, Feb. 16, 2011, 01:45:32 CST). The respondent agreed to a continuance. Id., 01:45:56 CST. The Court conditionally granted the petitioner’s request. Id,., 01:46:18 CST. The Court ordered the petitioner to contact the Court in three (3) weeks, regarding the status of her representation. Id. The petitioner faded to provide the Court any written correspondence within the specified timeframe.
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Art. VI—Executive
Sec. 1. Composition of the Executive.
(b) The Executive Branch shall be composed of any administrative Departments created by the Legislature, including a Department of the Treasury, Justice, Administration, Housing, Business, Health and Social Services, Education, Labor, and Personnel, and other Departments deemed necessary by the Legislature. Each Department shall include an Executive Director, a Board of Directors, and necessary employees. The Executive Director of the Department of Justice shall be called the Attorney General of the Ho-Chunk Nation. The Executive Director of the Department of Treasury shall be called the Treasurer of the Ho-Chunk Nation.
Art. VII—Judiciary
Sec. 6. Poimrs of the- Tribal Court.
(a) The Trial Court shall have the power to make findings of fact and conclusions of law. The Trial Court shah have the power to issue all remedies in law and in equity including injunctive and declaratory relief and all writs including attachment and mandamus.
Art. X—Bill of Rights
Sec. 1. Bill of Rights.
(a) The Ho-Chunk Nation, in exercising its powers of self-government, shall not:
(8) deny to any person within its jurisdiction the equal protection deprive any person of liberty or property without the due process of law;
EMPLOYMENT RELATIONS ACT OF 2004, 6 HCC § 5
Ch. V—Work Rules & Employee Conduct, Discipline, & Administrative Review
Subsec. 30. Employee Conduct,
e. Unacceptable Conduct. The following employee acts, activities, or behavior that are unacceptable conduct.
(18) Inefficiency, incompetency, or negligence in the performance of duties, *500 including failure to perform assigned tasks or training, or failure to discharge duties in a prompt, competent, and reasonable manner.
Subsec. 31. Employee Discipline.
a. Depending on the nature of the circumstances of an incident, discipline will normally be progressive and should bear a reasonable relationship to the violation. Based on the severity of the employee conduct, progressive discipline may not be applicable. Supervisors imposing discipline shall afford Due process to the employee prior to suspending or terminating any employee. Types of discipline include:
(2) Termination.
Subsec. 33. Administrative Review Process.
a. Policy.
(1) The Department of Personnel will take all reasonable steps to investigate any incident, which has resulted in disciplinary action. It is the policy of the Ho-Chunk Nation to afford all eligible employees who have been subject to suspension or termination a means of having the circumstances of such disciplinary action reviewed by an impartial and objective Grievance Review Board (Board).
(2) Employees are entitled to grieve suspensions or terminations to the Board. The Board will be selected from a set pool of employees and supervisors with grievance training, who will review a case and determine whether to uphold the discipline.
(3) Following a Board decision, the employee shall have the right to file an appeal with the Ho-Chunk Nation Trial Court (Court).
c. Notification of Disciplinary Action. At the time an employee is notified of disciplinary action, the employee shall be advised of his or her right to a hearing-before the Grievance Review Board.
d. Request for a Hearing. An employee must request a hearing within five (5) business days of the date the disciplinary action was taken. At the time the employee requests a hearing, he or she must inform the Department of Personnel if he or she is to be represented by an attorney. If so, the attorney must also file for an appearance with Department of Personnel within five (5) days of the date the employee requested a hearing. Failure to request the hearing within this time frame will result in the forfeiture of a hearing by the Board.
f. Hearing Procedure
(1) Review of Record. The Board will convene to review the records submitted to the Board prior to appearance by the grievant and supervisor to present their cases. Staff of the Department of Personnel shall also appear and be available to advise all participants with regard to policy and procedure.
(3)Employee’s Presentation. When the supervisor’s presentation has concluded, the employee shall present to the Board the reasons why he or she believes that the disciplinary action should not be upheld. The employee may call witnesses at this time. This presentation shall not exceed two hours without the Board’s permission.
g. Proceedings of the Board. At the commencement of a hearing before the Grievance Board of Review [sic ], the Department of Personnel will discuss with the Board their responsibilities and obligations including, but not limited to, the following:
(7) At the conclusion of the presentation of testimony and evidence, the Board will privately deliberate and make a decision within five (5) calendar days. No record of the Board’s deliberation *501 will be made. The decision of the Board shall describe the facts of the case and determine whether the facts support a violation of the Employment Relations Act or applicable Unit Operating Rules.
Subsec. 35. Judicial Review.
a. Waiver of Sovereign Immunity. Pursuant to Article XII of the Constitution of the Ho-Chunk Nation, the Ho-Chunk Nation Legislature expressly waives the sovereign immunity of the Ho-Chunk Nation in the limited manner described herein. This waiver shall be strictly construed.
c. Judicial review of a grievance involving suspension, termination, discrimination or harassment may proceed to the Ho-Chunk Nation Trial Court only after the Administrative Review Process has been exhausted through the Grievance Review Board. An employee may appeal a Board decision to the Trial Court within thirty (30) calendar days of when the Board decision is served by mail.
d. Relief.
(1) This limited waiver of sovereign immunity allows the Trial Court to award monetary damages for actual wages established by the employee in an amount not to exceed $10,000, subject to applicable taxation.
e. Under this limited waiver of sovereign immunity, the Court shall review the Board’s decision based upon the record before the Board. Parties may request an opportunity to supplement the record in the Trial Court, either with evidence or statements of their position. The Trial Court shall not exercise de novo review of Board decisions. The Trial Court may only set aside or modify a Board decision if it was arbitrary or capricious.
HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Rule 42. Scheduling Conference.
Scheduling Order. The Court may enter a scheduling order on the Court’s own motion or on the motion of a party. The Scheduling Order may be modified by motion of a party upon [a] showing of good cause or by leave of the Court.
Rule 57. Entry and Filing of Judgment.
All judgments must be signed by the presiding Judge. All signed judgments shall be deemed complete and entered for all purposes after the signed judgment is filed with the Clerk. A copy of the entered judgment shall be mailed to each party within two (2) calendar days of filing. The time for taking an appeal shall begin running from the date the judgment is filed with the Clerk. Interest on a money judgment shall accrue from the date the judgment is filed with the Clerk at a set rate by the Legislature or at five percent (5%) per year if no rate is set.
Rule 58. Amendment to or Relief from Judgment or Order.
(A) Relief from Judgment. A Motion to Am,end or for relief from judgment, including a request for a new trial shall be made within ten (10) calendar days of the filing of judgment. The Motion must be based on an error or irregularity that prevented a party from receiving a fair trial or a substantial legal error that affected the outcome of the action.
(B) Motion for Reconsideration. Upon motion of the Court or by motion of a party made not later than ten (10) calendar days after entry of judgment, the Court may amend its findings or conclusions or make additional findings or conclusions, amending the judgment accordingly. The motion may be made with a motion for a new trial. If the Court amends the judgment, the time for initiating an appeal commences upon entry of the amended judgment. If the Court denies a motion filed under this Rule, the *502 time for initiating appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) days after the filing of such motion, and the Court does not decide a motion under this Rule or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating the appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(C) Motion to Modify. After the time period in which to file a Motion to Amend of a Motion for Reconsideration has elapsed, a party may file a Motion to Modify with the Court. The Motion must be based upon new information that has come to the party’s attention that, if true, could have the effect of altering or modifying the judgment. Upon such motion, the Court may modify the judgment accordingly. If the Court modifies the judgment, the time for initiating an appeal commences upon entry of the modified judgment. If the Court denies a motion filed under this Rule, the time for initiating an appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) calendar days after the filing of such motion, and the Court does not decide the motion or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(D) Erratum Order or Re-issuance of Judgment. Clerical errors in a Court record, including the Judgment or Order, may be corrected by the Court at any time.
(E) Grounds for Relief. The Court may grant relief from judgments or orders on motion of a party made within a reasonable time for the following reasons: (1) newly discovered evidence which could not reasonably have been discovered in time to request a new trial; (2) fraud, misrepresentation or serious misconduct of another party to the action; (3) good cause if the requesting party was not personally served in accordance with Rule 5(c)(l)(a)(i) or (ii), did not have proper service and did not appear in the action; or (4) the judgment has been satisfied, released, discharged or is without effect due to a judgment earlier in time.
Rule 63. Judicial Review of Administrative Adjudication.
(A) Any person aggrieved by a final agency decision may request that the Ho-Chunk Nation Trial Court review such decision by filing a Petition for Administrative Review with the Court within thirty (30) calendar days of such decision, unless otherwise provided.
(B) The Petition for Administrative Review shall identify the petitioner making the request by name and address. The Petition for Administrative Review must also contain a concise statement of the basis for the review, i.e., reason or grounds for the appeal, including a request to supplement the evidentiary record pursuant to HCN R. Civ. P. 63(D)(l)(a-b), if applicable. The statement should include the complete procedural history of the proceedings below. The petitioner must attach a copy of the final administrative decision to the Petition for Administrative Review.
(D) The commission or board, designated as the respondent, must transmit the administrative record to the Court within fifteen (15) days after receipt of the Petition for Administrative Review. The administrative record shall constitute the *503 sole evidentiary record for judicial review of the agency decision....
(E) Within thirty (30) calendar days of filing the Petition for Administrative Review, the petitioner shall file a written brief, an Initial Brief.... The respondent shall have thirty (30) calendar days after filing of the brief in which to file a Re-spouse Brief. After filing of respondent’s Response Brief, the petitioner may file the Reply Brief within ten (10) calendar days.
(G) At the discretion of the Court, the Court may require an oral argument. The Court shall decide the order of the presentation, the length of time each party is permitted for their presentation, the issues to be addressed in oral argument, and such other matters as may be necessary. An order entitled, Notice of Oral Argument, shall include all such matters and shall be served on all parties at least ten (10) calendar days prior to the date set for argument.
FINDINGS OF FACT[1]
1. The petitioner, Sarina Quarderer, resides at S2869 Decorah Rd., # 1331, Bara-boo, WI 53913. The petitioner was employed as a Table Games Dealer at the Ho-Chunk Casino, located at S2845 White Eagle Road, Baraboo, WI 53913.
2. The respondent, Ho-Chunk Casino Hotel & Convention Center, is a division within the Ho-Chunk Nation Department of Business, located on trust lands at S3214 Highway 12, Baraboo, WI, 53913. See Dep’t of Bus. Establishment & Org. Act of 2001, § 3(5)(c); (Organizational Chart on file with HCN Department of Business).
3. Following an investigation, on October 11, 2010, Table Games Shift Supervisor Samantha Day, met with the petitioner to discuss an incident that occurred on August 19, 2009. Id. at 2-3.
4. Subsequent to the meeting, the respondent decided to terminate the petitioner from employment and due to the severity of her actions progressive discipline was not implemented. Admin. Record at 48.
5. The petitioner was terminated from her employment on November 8, 2009. GRB Decision at 3.
6. The petitioner timely filed her grievance on November 13, 2010, to contest the termination. Admin. Record at 17.
7. On March 17, 2010, the GRB conducted a Grievance Review Hearing in accordance with the ERA, § 5.34f. Grievance Review Board, Decision (hereinafter GRB Decision), Case No.: 128.09T at 1; see also GRB Audio Transcri.pt.
8. The Court incorporates by reference Facts and Findings 2-12, as determined by the GRB. Id. at 2-3.
9. Upon administrative review, the petitioner asserted several due process arguments:
a. First, that she her employer did not give her proper due process, since she did not have “notice and a Real [sic] chance to present ... her side of the story.” Initial Br. at 1.
i. During her pre-deprivation hearing, the supervisor should have informed *504 her of the disciplinary action that would be taken. Id, at 1,
ii. The supervisor should have allowed her to view all of the evidence against her, including the video tape that displays the petitioner’s misconduct. Id. at 3.
b. Second, the petitioner asserts that she never received a fair opportunity to present her case to the GRB. Id. at 2.
i. Specifically, that the GRB failed to consider “if the respondents considered any other evidence or actions to take or did take to adequately determine if termination was the only course of action.” Id. at 1.
10. The petitioner also argues that the severity of the discipline that she received was improper, since progressive discipline was not used. Id. at 1.
DECISION
The petitioner presents two (2) due process issues upon administrative appeal. She states that she was not afforded due process regarding her termination of employment, and that she was not provided an opportunity to adequately present her case to the GRB. The Court proceeds to independently assess whether the respondent afforded the petitioner pre-deprivation minimal procedural due process. See Const, Art. X, § 1(a)(8).[2] The ERA provides that “[supervisors imposing discipline shall afford Due Process to the employee prior to suspending or terminating any employee.”[3] ERA, § 5.31a. The Court, however, must determine the sufficiency of the procedural protections offered by the employer. Basically, an employee must receive a “meaningful opportunity to be heard before their property can be taken away.”[4] Gary Lonetree, Sr. v. John Holst, as Slot Dir., et al, CV 97-127 (HCN Tr. Ct., Sept. 24, 1998) at 10 (citing Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)), aff'd, SU 98-07 (HCN S.Ct., Apr. 29, 1999) (emphasis added).
Consequently, a pre-deprivation hearing “need only include oral or written notice of the charges, an explanation of the employer’s evidence, and an opportunity for the employee to tell his [or her] side of the story.” Gilbert v. Homar, 520 U.S. 924, 929, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997). The hearing does not need to resemble a proceeding that one would encounter in civil litigation. Nowak v. City *505 of Calumet City, No. 86 C 1859, 1987 WL 10298, at *1-2, 1987 U.S. Dist. LEXIS 3417, at *3-4 (N.D.Ill. Apr. 27, 1987). “In sum, procedural due process requires neither perfect process nor infinite process. Rather, it mandates a balancing of interests, one of which is the practicality of providing pre-deprivation process at a time and of a type likely to avoid erroneous deprivations.”[5] Balcerzak v. City of Milwaukee, 980 F.Supp. 983, 989 (E.D.Wis. 1997) (citing Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).
The employee’s right to provide a meaningful response to the charges levied against him or her presumes the presence of an individual possessing discretion to determine the appropriate level of discipline. In fact, the Court has previously held the following:
a supervisor who neither maintains discretion to reverse or postpone a termination decision cannot provide an employee a meaningful opportunity to be heard. A pre-termination hearing is not a mere technicality and cannot be reduced to a facade. The hearing’s underlying purposes, which all hinge upon the employer’s discretion, cannot be accomplished if the result of the hearing is a foregone conclusion. The employer cannot use pre-termination hearings to simply process paperwork.
Sherry Fitzpatrick v. Ho-Chunk Nation et al., CV 04-82 (HCN Tr. Ct., Feb. 20, 2006) at 16 (citation omitted). Otherwise, the meaningful right to be heard would indeed be rendered a meaningless constitutional entitlement. Furthermore, the Court previously noted, “[a]n employer does not need to apprise an employee of the entire extent and specifics of the evidence, but instead must reveal the substance of the case against him or her so as to provide the employee the meaningful opportunity to respond. Walls v. City of Milford, 938 F.Supp. 1218, 1222-23 (D.Del.1996). Therefore, in an employment context, procedural due process requires oral or written notification of the nature of the case against the employee and an opportunity for the employee to tell his or her side of the story.
The petitioner attempts to argue that she did not receive due process since the supervisor did not put her on notice that she would be terminated as a result of the incident, occurring on August 19, 2009. Initial Br. at 1. The petitioner incorrectly assumes that procedural due process requirements at a pre-deprivation hearing are the same as the requirements during a judicial hearing. To clarify, the nature of those requirements will vary depending on the venue in which they are employed. Generally in a court of law, parties must receive advance written notice of any case filed against them (i.e. Notice and Summons ), and the court must also afford parties the opportunity to be heard (i.e. offer a Response and/or a hearings). As previously stated, in an employment context, an employee must be informed of the “substance of the case against him or her so as to provide the employee the meaningful opportunity to respond. Id.; see also Lonetree, CV 97-127 at 10.
This standard does not require that an employer notify an employee of the potential disciplinary actions that will result from the pre-deprivation hearing. The purpose of the hearing is to put the employee on notice that previous actions of *506 the employee may be subject to discipline and to simply provide them with an opportunity to tell their side of the story. See Fitzpatrick, CV 04-82 at 16. To conclude otherwise would run afoul of previous judicial determinations. See Id. at 16. In the instant case, upon completion of an investigation, the supervisor informed the petitioner of claims made against her. GRB Decision at 3. At the meeting with her supervisor, the petitioner was able to tell her side of the story. Id.; see also Admin. Record at 74-75. It is apparent that this meeting fulfilled all of the aforementioned requirements of a meaningful opportunity to be heard.
The petitioner further asserts that she was denied due process prior to her termination, as her supervisor failed to allow her to review the surveillance tape documenting her misconduct. Initial Br. at 3. Again, the petitioner misunderstood the meaning of procedural due process in an employment context. The employee must be informed about the nature of the case against him or her. Lonetree, CV 97-127 at 10. This standard does not require that an employee be provided an opportunity to review every piece of evidence against her. The petitioner was provided oral notification regarding the nature of her misconduct.[6] Admin. Record, at 58. Again, it is apparent that the pre-deprivation meeting fulfilled all of the aforementioned requirements of notice. THEREFORE, the Court finds that the petitioner was afforded her constitutionally mandated pre-de-privation procedural due process.
Next, the petitioner alleges that she failed to receive a fair opportunity to present her case to the GRB. Initial Br. at 1. At a GRB hearing procedural due process requires that the GRB conduct all grievance review hearings in accordance with the ERA. See ERA, § 5.34f. Unlike the due process requirements of a pre-deprivation hearing, the due process requirements during a GRB hearing are clearly stated in the ERA. See Id. The Court thoroughly reviewed the two (2) hour GRB hearing and cannot determine where the GRB violated the statutory requirements of the ERA. The GRB fully provided the petitioner opportunity to present her case. In fact, the majority of the two (2) hour hearing was the petitioner’s presentation. In accordance with the ERA, the GRB adequately followed the hearing procedures required under the law. ERA § 5.34f. Both parties presented their cases, witnesses, and evidence.
The petitioner maintains responsibility to establish, by a preponderance of the evidence that the employer violated the ERA. See ERA, § 5.34h(l). The petitioner incorrectly asserts that the GRB failed to consider “if the respondents considered any other evidence or actions to take or did take to adequately determine if termination was the only course of action.” Initial Br. at 1. The GRB does not record their deliberations, and therefore this accusation cannot be evaluated. ERA, § 5.34g(7). The GRB’s role is to determine whether the employer violated the ERA, based on the evidence presented to them. Id. The petitioner simply failed to present any evidence to suggest otherwise. The GRB is not an independent investigator and must only rely on the information presented to them. THEREFORE, the Court finds that the petitioner was afforded adequate due process during her GRB hearing.
Turning to the next issue, the Court must determine whether the GRB’s *507 decision to uphold the petitioner’s termination was arbitrary and capricious. Executive agencies may engage in formal on the record adjudication, resulting in the promulgation of rules through the formation of a body of case precedent. See, e.g., Dickinson v. Zurko, 527 U.S. 150, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999); Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998); Bowman Transp. v. Ark-Best Freight Sys., 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). In reviewing adjudicative rulemaking, as well as other forms of agency action, courts begin by confirming the presence of an “established ... scheme of reasoned decisionmaking.’ ”[7] Allentown, 522 U.S. at 374, 118 S.Ct. 818 (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 52, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). Courts then perform a two-tiered analysis, determining whether the adjudicative rule satisfies a substantial evidence standard, and, if so, whether the rule escapes a designation of arbitrary and capricious.[8]
The two (2) inquiries represent “separate standards.’ ” Bowman, 419 U.S. at 284, 95 S.Ct. 438 (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 413, 91 S.Ct. 814, 28 L,Ed.2d 136 (1971)). Consequently, a court “may properly conclude[ ] that, though an agency’s finding may be supported by substantial evidence, ... it may nonetheless reflect an arbitrary and capricious action.” Bowman, 419 U.S. at 284, 95 S.Ct. 438. In such an event, the Court would afford no deference to the adjudicative rule of the agency precisely because the rule could not withstand the more deferential arbitrary and capricious standard.
The substantial evidence standard has no application beyond the review of “record-based factual conclusion[s],” and only in unusual circumstances will agency action surviving a substantial evidence review falter when scrutinized further. Dickinson, 527 U.S. at 164, 119 S.Ct. 1816. In performing the second-tier of analysis, arbitrary and capricious review,
[a] reviewing court must “consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.” The agency must articulate a “rational connection between the facts found and the choice made.” While [a court] may not supply a reasoned basis for the agency’s action that the agency itself has not given, [a court] will uphold a decision of less than ideal clarity if the agency’s path may reasonably be discerned.
*508 Bowman, 419 U.S. at 285-86, 95 S.Ct. 438 (citations omitted).
Typically, however, a court will suspend its review after ascertaining the presence of substantial evidence. “Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Edison Co. v. Labor Bd., 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). The relevant evidence must retain probative force, and, therefore, “[m]ere uncorroborated hearsay or rumor does not constitute substantial evidence.” Id. at 230, 59 S.Ct. 206. And, a court must examine the evidence supporting the decision against “the record in its entirety, including the body of evidence opposed to the [agency’s] view.” Universal Camera Corp. v. Labor Bd., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); see also 5 U.S.C. § 706.
Nonetheless, as noted above, an adjudicative rule rightfully subjected to the two-tiered analysis must also at its core represent the outcome of a reasoned deliberation. “[T]he process by which [an agency] reaches [its] result must be logical and rational.” Allentown, 522 U.S. at 374, 118 S.Ct. 818. Courts accordingly must insure compliance with the requirement of reasoned decision-making. In this regard,
[i]t is hai'd to imagine a more violent breach of that requirement than applying a rule of primary conduct or a standard of proof which is in fact different from the rule or standard formally announced. And the consistent repetition of that breach can hardly mend it.... The evil of a decision that applies a standard other than the one it enunciates spreads in both directions, preventing both consistent application of the law by subordinate agency personnel ..., and effective review of the law by the courts.
Id. at 374-75, 118 S.Ct. 818. The inconsistent or contrary application of an adjudicative rule must result in a finding that the agency has failed to support its action by substantial evidence. A court cannot deem subsequent aberrations as simply agency interpretations of the underlying rule. Id. at 377-78,118 S.Ct. 818.
To reiterate, a court must determine whether the challenged administrative action rests upon substantial evidence and escapes a characterization of arbitrary and capricious. Furthermore, the need for reasoned decision-making and the consistent application of resulting decisions underlie and overarch the statutorily based analysis. In the instant matter, the GRB had to determine whether the disciplinary action imposed on the petitioner was unreasonable and violated the progressive discipline practice. GRB Decision, at 6.
The GRB determined that the petitioner failed to provide any evidence to substantiate that a termination was unreasonable under the circumstances. GRB Decision at 6. The ERA explicitly states that “[d]e-pending on the nature of the circumstances of an incident, discipline will normally be progressive and should bear a reasonable relationship to the violation.” ERA, § 5.31. Id. The GRB found:
The board simply yields to [the employer’s] deference of management when making a decision within the scope their authority that does not exceed a reasonable measure. The GRB finds the supervisors [sic ] discretion to impose a termination within reason.
GRB Decision at 6. The ERA neither mandates the use of progressive discipline, nor provides guidance as to what constitutes progressive discipline.[9] Based upon *509 the evidence and testimony presented to the GRB,[10] this Court must affirm the GRB’s determination.
The evidence presented to the GRB demonstrates that the petitioner was terminated due to serious statutory violations, rising to the level of theft. ERA, § 5.30(e)(18). The petitioner argues that a termination was unreasonable and progressive discipline should have been utilized. Initial Br. at 1. The petitioner contends that the practice of not dropping tokes and playing them when they wanted was regularly performed by all dealers and that she had not been told she could not do it. Admin. Record at 58. The petitioner initially claims that she was unaware of the rule against playing dealer tokes. Id. The dealer’s procedural manual clearly defines proper dealer betting procedure. Id. at 128-129. The petitioner does not dispute that she violated dealer procedure. Initial Br. at 2. The petitioner cannot use ignorance as a defense for gross negligence on the job, when she clearly admits to possessing a table games dealer manual that expresses the proper procedures required by table games dealers.
The Supreme Court recognizes that “[w]hen reviewing administrative decisions, the Trial Court plays the role of an appellate court and is not charged with finding facts. The GRB, with its greater expertise and familiarity, is the appropriate body to find facts.”[11] Funmaker, SU 07-05 at 9; see also ERA, § 5.34a(2). The GRB deemed the respondent’s disciplinary action of termination as reasonable in light of the established facts, and the Court shall not upset this determination. The Court is especially concerned with overturning the decision of the GRB in this instance due to the severity of the ERA violation by the defendant. In light of the evidence presented to the GRB, there is substantial basis for their determination, and the Court cannot find the decision arbitrary and capricious. BASED UPON THE FOREGOING, the Court upholds the GRB Decision.
The parties retain the right to file a timely post judgment motion with this *510 Court in accordance with HCN R. Civ. P. 58, Amendment to or Relief from Judgment or Order. Otherwise, “[t]he time for taking an appeal shall begin from the date the judgment is filed with the [Trial Court] Clerk [of Court].” HCN R. Civ. P. 57. Since this decision represents a non-final judgment, “[a]n appeal from [this] interlocutory order maybe [sic ] sought by filing a petition for permission to appeal with the Supreme Court Clerk within ten (10) calendar days after the entry of such order with proof of service on all other parties to an action.” Ho-Chunk Nation Rules of Appellate Procedure, Rule 8.[12]

 The Court would like to thank Law Clerk/Staff Attorney Rebecca L. Maki for her assistance for in the drafting of this opinion.

. The Court does not perform a de novo review of administrative agency decisions, and, consequently, generally refrains from making independent factual findings. ERA, § 5.35e. Unless otherwise clearly indicated, the below findings of fact constitute relevant findings of the administrative agency for purposes of this judgment as articulated within the administrative decision. The Court shall only propose alternative findings of fact in the event that the agency’s (actual rendition is not supported by substantial evidence. .Sec infra p. 505.

. "The HCN Legislature lacks the ability to confer constitutional adjudication authority upon an executive administrative agency, and the ERA does not purport to do so. Any such attempt would prove inconsistent with the theoretical and legal underpinnings of administrative power. Willard Lonetree v. Larry Garvin, CV 06-74 (HCN Tr. Ct., Mar. 9, 2007) at 15, aff'd, SU 07-04 (HCN Tr. Ct., Oct. 8, 2007).

. The Court previously referred to a "for cause" employment provision for the purpose of ascertaining a property right in employment, which would consequently entitle an employee to procedural due process protections. See, e.g., Joyce L. Warner v. Ho-Chunk Nation et al., CV 04-72 (HCN Tr. Ct., Sept. 11, 2006), aff'd, SU 06-05 (HCN Tr. Ct., June 19, 2007). The ERA does not contain a comparable provision, but clearly requires that supervisors afford pre-deprivation procedural due process. Furthermore, the mere inclusion of statutory grounds for discharge has proven sufficient to establish the presence of a property interest in public employment. Dixon v. Mayor & Council of Wilmington, 514 F.Supp. 250, 253 (D.Del.1981).

.The concept of due process equates with the notion of "fundamental fairness,” which also claims an origin within hocqk tradition and custom. Gorman v. Univ. of R.I., 837 F.2d 7, 12 (1st Cir.1988); accord In the Interest of the Minor Child. K.E.F., SU 97-03 (HCN S.Ct., Oct. 17, 1997) at 5.

. An erroneous deprivation can result in several serious consequences to the employee that may only be effectively prevented through minimal procedural due process. See Margaret G. Garvin v. Donald Greengrass et al., CV 00-10, -38 (HCN Tr. Ct., Mar. 9, 2001) at 27-28.

. The Court notes that the petitioner did receive copies of written reports detailing the contents of the surveillance tapes; however, the Court is unclear as to when these reports were provided to the petitioner. See Admin. Record at 157.

. The HCN Legislature has incorporated the acknowledged federal standards within certain legislation. See, e.g., former Amended & Restated Gaming Ordinance of the Ho-Chunk Nation (hereinafter Gaming ordinance), § 1101(c)(v); compare 5 U.S.C. § 706.

. The ERA directs that “[t]he Trial Court may only set aside or modify a Board decision if it was arbitrary and capricious,” ERA, § 5.35e; but cf. Gaming ordinance, § 1101(c)(v). Nonetheless, the Court shall continue to engage in the two-tiered analysis due to the inseparable components of the inquiry. Furthermore, some federal courts have denoted a convergence of the standards, making any analytical distinction unattainable. See, e.g., Aircraft Owners & Pilots Ass’n v. FAA, 600 F.2d 965, 971 n. 28 (D.C.Cir. 1979) (describing the distinction as "largely semantic”). This Court disagrees with this assessment, at least in the context of formal on the record adjudication, but it reveals the interrelatedness of the two standards.

. The Court commented on the usage of progressive discipline, as prescribed in predeces *509 sor litigation, in the following manner:
[T]he Court notes its disapproval of equating prior and current disciplinary measures as resulting from inefficient, incompetent or negligent performance of duties, PERSONNEL MANUAL, Ch. 12, Part C, No. 1, p. 46, for the purpose of attempting to establish progressive discipline. The focus correctly remains upon whether the past discipline arose from a "similar past offense,” id. at 48, and not from actions capable of falling under a general catchall provision.
Roy J. Rhode v. Ona M. Garvin, as Gen. Manager of Rainbow Casino, CV 00-39 (HCN Tr. Ct., Aug. 24, 2001) at 20 n. 7; see also Daniel M. Brown v. James Webster, HCN Executive Dir. of Bus., CV 04-38-40 (HCN Tr. Ct., May 10, 2006) at 34 (offering further clarification of the permissible application of progressive discipline, disagreeing with employer’s linkage to only "repeated identical instances of unacceptable conduct”). The Court notes that the petitioner in the instant case has a history of "similar past offense[s].” Id. Specifically, the petitioner had problems with completing tasks correctly and efficiently. See Admin. Record at 34.

. The petitioner argues that the GRB erred in admitting a Performance Review and a Performance Improvement Plan into evidence since they were prior discipline and were not relevant. The Court declines to definitively address the issue, since the GRB ultimately declined to rely on that information to assess whether progressive discipline was utilized. Specifically, the GRB stated "the burden to prove management failed to execute discipline in a progressive manner cannot be placed upon the Board when such a claim is absent any merited evidence or testimony.” GRB Decision at 8.

. Upon administrative review', the Trial Court is responsible for evaluating the actions of the GRB in accordance with the ERA. As such, a Petition for Administrative Review is not a petition for a trial de novo.

. Parties can obtain a copy of the applicable rules by contacting the Ho-Chunk Nation Judiciary at (715) 284-2722 or (800) 434-4070 or visiting the judicial website at www.ho-chunknation.com/govemment/judicial/cons^ law.htm.